## AMERICAN SURETY CO. v. PAULY.

### (Circuit Court of Appeals, Second Circuit. February 20, 1896.)

#### No. 57.

1. FIDELITY INSURANCE—PROOFS OF LOSS.
   Proofs of loss under a bond of suretyship insuring an employer against loss by dishonesty of an employé are mercantile documents, and are not to be tested by the same rules of interpretation as an indictment, or even a pleading. It is only required that they shall contain a brief and general statement of the facts with substantial accuracy, truthfully informing the insurer how the loss occurred, and not tending, either by what they contain or what they omit, to mislead the insurer.

2. SAME—PRIMA FACIE EVIDENCE OF LOSS.
   Where such a bond of suretyship provides that certain statements and accounts "shall be prima facie evidence" of a loss, such expression is not necessarily confined to the consideration of a claim by the insurer, before suit; and it is not error to instruct the jury, on the trial of an action on such a bond, that the plaintiff has made out a prima facie case by offering in evidence the statements and accounts referred to.

In Error to the Circuit Court of the United States for the Southern District of New York.

This is a writ of error to review a judgment of the circuit court, Southern district of New York, for $28,521.16, entered upon the verdict of a jury against the American Surety Company. The plaintiff below sued as receiver of the California National Bank of San Diego, Cal., to recover the amount of a bond for $25,000, issued by the company, insuring the bank against any act of fraud or dishonesty committed by its president, one John W. Collins. The facts in the case are largely the same as in action No. 1 between the same parties to recover on a similar bond insuring the fidelity of O'Brien, the cashier, and in which the opinion of this court is handed down simultaneously with the following. 72 Fed. 470. Most of the proof taken in the one case was read in evidence in the other. It will be unnecessary, therefore, in this opinion to review the facts, which are fully stated in the opinion in the cashier's case; nor to repeat anything said therein as to assignments of error which are common to both cases. It will be sufficient to discuss only such points as are peculiar to the case at bar.

George A. Strong, for plaintiff in error.

Wm. Mitchell, for defendant in error.

Before LACOMBE and SHIPMAN, Circuit Judges.

LACOMBE, Circuit Judge (after stating the facts). 1. The first notification to the surety company in this case, as in the other, was sent May 23, 1892, and the proofs of loss transmitted June 24, 1892. There was a similar conflict of evidence as to the date when the receiver acquired knowledge of Collins' acts of fraud or dishonesty, and the question whether notice and proofs of loss were sent with reasonable promptness was left to the jury under a charge more favorable even to the defendant below than was the charge in the O'Brien Case. In view of the evidence and of the instructions given by the court, plaintiff may fairly be given the benefit of the presumption that the jury found discovery to have been made as late as "a few days before May 23, 1892." It is contended that this was more than six months

from the death, dismissal, or retirement of the employé. The receiver qualified and took possession December 29, 1891, and Collins died March 3, 1892. Plaintiff in error relies upon the fact that on November 12, 1891, the bank examiner took possession of the assets of the bank, which had suspended payment. That act, however, did not operate as a "dismissal or retirement of the employé from the service of the employer," which is the phraseology of the bond. Collins, on that date, suspended the performance of his ordinary functions, because the bank suspended the transaction of a banking business, but the bank still existed as a national bank corporation, and Collins was still its president. If at any time before the receiver took possession the parties interested in the bank had made good its deficit, and the bank examiner had restored the assets, no new appointment would have been necessary to put him in the service of his employer. The assignments of error covering this point are unsound.

2. It is next contended that the alleged loss was not set forth in the proof of claim. In this case, as in the other, several distinct acts of fraud, with consequent loss, were declared upon, but the court left to the jury only the transactions of October 13 and 14, 1891. What those were will be found fully stated in the opinion in the other case. So much of the proof of claim as refers to these transactions is as follows: In an affidavit of the receiver dated May 31, 1892, and inclosed in a letter making demand, are these paragraphs:

"That on the 13th day of October, 1891, he, the said J. W. Collins, as president of said bank, and upon the representation that he was acting in behalf of said California National Bank of San Diego, obtained a loan from the United States National Bank of New York of twenty-five thousand dollars upon a note of the California National Bank of San Diego, and by rediscounting the assets of said bank, and took and applied the said sum of $25,000, then and there the assets of said bank, to his individual use, and embezzled said sum.

"That on the same day, to wit, on October 13, 1891, said J. W. Collins, while president of said bank, and acting as such president, and upon the representation that he was acting in behalf of the said bank, obtained from the Western National Bank of New York a loan of $20,000 upon a note of said bank, made payable to himself, and collateralized with assets of said bank; and then and there, as such president, receiving said sum of $20,000, and in behalf of the said California National Bank of San Diego, appropriated the same to his individual use, and embezzled the same. * * * Affiant says that none of said sums of money so as aforesaid by said J. W. Collins abstracted and embezzled, nor any part thereof, were ever repaid or returned to said bank."

On the very day (May 31, 1892) this affidavit was sent from San Diego, the surety company wrote from New York, inclosing two claim blanks, and asking to have itemized thereon any claims the receiver might have to present under the bonds of Collins and of O'Brien. In reply thereto the receiver wrote, inclosing "two affidavits in regard to the embezzlement of the late J. W. Collins and George N. O'Brien, furnished after consultation with my legal adviser, as giving information fuller than I otherwise could do by using the blank sent me." Receipt of these two affidavits was duly acknowledged July 8, 1892, but most careful examination of the record fails to disclose them among the exhibits. The letter inclosing them was marked "Exhibit 28," but, singularly enough, these affidavits seem not to have been offered, or their

omission from the correspondence in any way accounted for. If they were here, it is possible that it would appear that the surety company was advised as to the nature of the transactions with a degree of explicitness sufficient to satisfy even the requirements of its own counsel in that regard, for reference to the opinion in the other case will show that the proof of claim under O'Brien's bond was not criticized for failure to accurately describe the transactions, but only because it did not, in defendant's opinion, expressly aver that loss ensued to the bank from such acts. An affidavit dated June 24, 1892, marked "Exhibit No. 1," was introduced as "Proof of loss June 24," and is probably one of these two affidavits. As to the transactions of October 13th and 14th, it is a duplicate of the affidavit of May 31st, already quoted from. Subsequently, and on July 18, 1892, plaintiff sent to defendant a statement of the account of Collins with the bank, with corrections of the erroneous and fraudulent entries on the books, showing the amount of his deficiency to be $374,978.22. Correspondence between the parties ensued, extending over several weeks, the receiver offering to extend every facility ·to defendant's inspector in such examination as he might wish to make of the records of the bank, the company promising to send such inspector, and making no objection to the form of ·the proof of loss. The criticism now advanced is that the proof of loss was faulty, because it set forth a transaction different from the facts, and was calculated to mislead the defendant. Briefly, the objection is to the statement that Collins "appropriated to his individual use and embezzled" the two sums loaned to the California Bank by the United States National Bank and the Western National Bank, respectively. The evidence shows that the loans were made by crediting the California Bank on the books of the two New York banks with the amounts of the loans, and that such credits were subsequently exhausted by the payment of drafts of the California Bank. Therefore, as defendant contends, Collins did not "embezzle" the same. Technically, this is so; but the proofs of loss under a policy are not to be tested by the same rules as would be applied to an indictment, or even to a pleading. They are mercantile documents. All that can reasonably be required of such a "written statement of the loss" is that it shall be a brief and general statement of the facts expressed in the language of commerce, and, as thus expressed, shall truthfully inform the company how the loss occurred, giving the facts and the result with substantial accuracy. As the word is used in ordinary speech, Collins did "embezzle" $24,500 and $20,000. He so arranged his fraudulent scheme that when the credits given to the California Bank, on the security of its property pledged as collateral with the two New York banks, were converted into money by payment of the drafts of the California Bank against such credits, that money was diverted from the treasury of the latter bank into Collins' individual possession. He cheated the bank out of $44,500, which he got ostensibly for said bank by improperly pledging its

assets in New York. The statement of loss might have stated the facts more fully,—might have shown the details of the process by which the proceeds of the pledge of the California Bank's property were forthwith so appropriated on its books that when they were subsequently drawn out of the New York banks they passed through the California Bank direct to Collins; but, even without such details, it states the loss resulting from Collins' dishonest and fraudulent acts broadly, and with substantial truthfulness. Unless documents such as these are to be construed closely, and the insured to be held rigidly to a measure of technical and legal accuracy in framing their phraseology not to be expected in mercantile transactions, the statement of loss submitted in this case was sufficient. And we know of no principle of law and of no authority which requires them to be construed otherwise than liberally, unless, perhaps, either because of what they contain or because of what they omit, the insurer is or may be misled to its prejudice. Defendant's counsel contends that the statement in this case was misleading, though there is no claim that the surety company was in fact misled. It is urged that upon receiving the statement the defendant company, if it had chosen to inquire as to the truth of the claim of loss, it would have ascertained from the New York banks that the loans had been made as asserted, but that the proceeds of such loans had been paid out, not to Collins individually, but to the California Bank on its own draft. This is so, but the conclusion sought to be drawn, viz. that "the surety therefore sees that the charge made in the proof of loss is absolutely false," is wholly unwarranted, for it might reasonably be true that the embezzlement took place in California. Defendant, therefore, was not entitled to a direction of the verdict in its favor on the ground that the alleged loss was not set forth in the claim, nor on the ground that either preliminary notice or proof of loss had not been served as required by the bond.

Very many other assignments of error are found in the record, but, as none of them are discussed in the brief of plaintiff in error (except some which are referred to in the opinion in the O'Brien Case), it will be unnecessary to rehearse them here. It is sufficient to say that they have been examined, and found to be unsound.

One point, however, which is not discussed upon the brief should be referred to.

3. The court charged the jury that the "plaintiff has established a prima facie case against the defendant, because he gave the written statement of loss, and subsequently transmitted to the defendant a copy of the account upon which it was based." To this, and to its repetition in other words, defendant duly excepted. This part of the charge was based upon a provision of the bond which reads as follows:

"It being understood that a written statement of such loss, certified by the duly-authorized officer or representative of the employer, and based upon the accounts of the employer, shall be prima facie evidence thereof."

It is contended that this does not mean that such statement shall be prima facie evidence in an action upon the bond; that "no such contingency was in the minds of the parties," and that it only refers to a consideration by the company of the question whether it will pay without suit; that it only indicates in what way the preliminary proof of a loss shall be made to the company. But neither the phraseology of the clause nor its collocation with the rest of the bond thus restricts its meaning. It is certainly open to the construction put upon it by the trial judge. Such construction is a most natural one. Nor is there anything extraordinary or startling in an agreement by the company that it will pay upon proof in a prescribed form being made to it, nor in its agreeing to accept such proof as prima facie sufficient to entitle the insured to a recovery in case of default. Conceding that it is also open to a construction which would confine it as plaintiff in error contends, it would be at least ambiguous; and it is elementary law that all obscurities and ambiguities in a policy of insurance are to be resolved against the underwriter, who has himself drafted the instrument. There was no error, therefore, in the charge in the particular complained of. The judgment of the circuit court is affirmed.