JACKSON v. FIDELITY & CASUALTY CO. OF NEW YORK (three cases).

(Circuit Court of Appeals, Fifth Circuit.   June 15, 1896.)

No. 452.

INSURANCE—LIMITATION BY CONTRACT—APPOINTMENT OF RECEIVER OF NATIONAL BANK.

An insurance company issued three policies to the F. National Bank, insuring it against loss by the dishonesty of three of its officials. It was provided in each policy that no suit thereon should be brought unless the same should be commenced within 12 months next after the discovery of the dishonesty on which it was based. Suit was brought upon the policies on February 1, 1895, alleging misappropriations of the funds of the bank by the insured officials between April 29, 1893, and July 1, 1893. As a reason for the delay in bringing suit, and to avoid the limitation in the policy, it was alleged in the declaration that the bank suspended payment on July 24, 1893; that, on July 26th, the comptroller of the currency, by the bank examiner, took possession of all the books and assets of the bank, and, on August 14th, appointed a receiver; that the examiner alleged sundry frauds against the bank officials, of which the receiver gave

notice to the insurance company, but that the bank itself did not and could not then discover the fraud; that, immediately after the suspension of the bank, its officials and a majority of its directors were arrested and put under bonds on criminal charges, whereby there were no officials of the bank to make investigations or institute proceedings; that on May 21, 1894, the bank resumed business, and its assets were restored to it by the receiver, though its books were retained by the district attorney; and that on said May 21st the bank instituted an investigation, discovered the frauds, and, within 12 months, commenced suit. It was also averred that, after notice of frauds was given to the insurance company by the receiver, the company was also notified that it was impossible to give the full particulars of the claim within three months (which was also required by the policy), and that facts were stated showing why it was impossible to get at the details necessary to bring suit within 12 months. *Held*, that these allegations of the declaration were sufficient to avoid the effect of the admission therein of a failure to bring suit within the 12-month period of limitation, and that it was error to sustain a demurrer to the declaration. Pardee, Circuit Judge, dissenting.

In Error from the Circuit Court of the United States for the Southern District of Florida.

Alex. St. Clair-Abrams, W. L. Palmer, and James D. Beggs, for plaintiff in error.

Louis C. Massey and T. Picton Baumgarten, for defendant in error.

Before PARDEE and McCORMICK, Circuit Judges, and SPEER, District Judge.

SPEER, District Judge. This is one of three cases brought to this court on writ of error from the circuit court of the United States for the Southern district of Florida. The defendant in error, a corporation organized under the laws of the state of New York, and engaged in the business of insuring the fidelity of employés, in consideration of cash premiums paid, entered into several obligations with the First National Bank of Orlando, Fla., insuring the latter against loss from defalcations of certain of its employés. These obligations were in the form of indemnifying bonds or policies of insurance for the integrity of the bank officials. One of these policies insured the fidelity of Nat Poyntz, as president of the bank, to the amount of $10,000. Another of these policies insured the fidelity of Nat Poyntz, as cashier of the bank, to the amount of $10,000. There were also two renewals of a former policy, which undertook to indemnify the bank against such defalcations as might be discovered on the part of Oliver T. Poyntz, the assistant cashier and general bookkeeper of the bank. The three suits were based upon these several indemnifying bonds or policies, and, as each of the three involves the same issues of law and fact, a statement of the issues as made in the suit on the policy of Nat Poyntz, as president, and the determination of the law applicable thereto, will also determine the issues in the other two cases. The Fidelity & Casualty Company (hereafter for brevity called the "Company") filed a demurrer to the declaration and amended declaration made by the bank on the policy of Nat Poyntz, as president. The demurrer was sustained, and a writ of error was sued out to review that judgment of the circuit court.

The case depends upon the construction of the following provisions in the policy:

"Subject to the provisions and conditions herein contained, the company shall, at the expiration of three months next after proof satisfactory to the officers of a loss as hereinafter mentioned, make good and reimburse to the employer, to the extent of the sum of ten thousand dollars, and no further, such pecuniary loss, if any, as may be sustained by the employer by reason of fraud or dishonesty of the employed in connection with the duties referred to, or duties to which, in the employer's service, he may be subsequently appointed or assigned by the employer, which has been committed during the continuance of the said term or any renewal thereof, and discovered during said continuance, or within six months thereafter, and within six months from the death, dismissal, or retirement of the employed; provided that, on the discovery of any such fraud or dishonesty as aforesaid, the employer shall immediately give notice thereof to the company, and that full particulars of any claim made under this bond shall be given in writing, addressed to the secretary of the company at its office in the city of New York, within three months after such discovery; and the company shall be entitled to call for, at the employer's expense, such reasonable particulars and proofs of the correctness of such claims as may be required by the officers of the company, and to have the same particulars, or any of them, verified by statutory declaration. * * * This bond is issued subject also to the following conditions, viz.: * * * That during the continuance in force of this bond, or a renewal thereof, the right to make a claim thereunder shall cease at the expiration of six months from the date at which the employed shall cease to be in the employ of the employer. * * * That no suit or proceeding at law or in equity shall be brought or arbitration required to cover any amount hereby insured, unless the same is commenced, and the process served, within the term of twelve months next after the first discovery of any such fraud or disloyalty as aforesaid."

Plaintiff, in its declaration, set out the bond, and charged that Nat Poyntz, as president, had fraudulently and dishonestly appropriated to his own use money of the bank, aggregating the sum of $6,670, between April 29, 1893, and July 1, 1893, the dates upon which the several sums were appropriated being stated. Similar averments of dishonest abstractions of larger amounts from the funds of the bank, by Nat Poyntz, as cashier, and Oliver T. Poyntz, as assistant cashier, were made in the other suits. The declaration contains the general averment that the bank had kept and performed all the things in said policy contained, on its part to be kept and performed, and the proper demand upon the defendant, and its refusal to pay the loss. The suit was not commenced until February 1, 1895. The declaration contains certain additional averments tending to explain the bank's delay in presenting its claim and in bringing its suit. The demurrer is based upon the alleged insufficiency of these explanations, or upon the effect of the admissions in them, as showing that the right of action was barred by the terms of the contract at the time the suit was brought, the limitations in the contract being conditions precedent. After the judgment had been rendered in the court below, W. B. Jackson, as receiver of the First National Bank of Orlando, was substituted as plaintiff, by order of the court, and the writ of error is prosecuted by him. It does not appear from the record what was the nature of his receivership, or that it had any connection with the previous receivership of Stockton.

This being an action at law, the rules of practice under the Florida statutes are applicable to it.    Rev. St. Fla. § 1045, provides:

"Either party in an action may aver performance of conditions precedent generally, and the opposite party shall not deny such averments generally, but shall specify in his pleadings the conditions precedent the performance of which he intends to contest."

It is urged, however, in the argument of the learned attorneys for the defendants, that:

"Where the plaintiff in the declaration, as they insist he does, goes beyond the necessities of the case, and states the case out of court by affirmative averments, which show his failure to perform a condition precedent, that advantage may be taken of the apparent want of a cause of action on demurrer (Brock v. Insurance Co. [Iowa] 64 N. W. 685), while this method of procedure is generally allowable and efficacious, the fallacy of its application to this case lies in a misinterpretation of the statements and averments of the declaration. It is contended by the defendants that it appears from the allegations of the declaration that the right of action on the policy is barred, because suit was not brought nor process served within twelve months after the first discovery of the fraud."

It is averred in the declaration that:

"On July 24, 1893, it (the said plaintiff) was compelled to suspend payment of its obligations, and that on the date of said suspension it had no knowledge and made no discovery of any fraudulent or dishonest acts of the said Nat Poyntz."

It is further averred that:

"On July 26, 1893, the comptroller of the United States took possession of all the books, assets, and property of the plaintiff, through one J. K. McDonald, its bank examiner, and that soon thereafter, to wit, on the 14th day of August, 1893, appointed one John N. C. Stockton as receiver of said bank, who thereupon took possession of all the moneys, assets, and property of the said bank and the books thereof; that the said J. K. McDonald, bank examiner, alleged and charged sundry and divers fraudulent and dishonest acts of the said Nat Poyntz, president as aforesaid, and his brother, Ollie Poyntz, assistant cashier of said bank, and due notice thereof was promptly given to the defendant by J. N. C. Stockton, receiver. But this plaintiff further avers that it (the plaintiff) did not and could not make the discovery of said fraudulent and dishonest acts of the said Nat Poyntz at that time."

It is further averred that:

"Immediately after the said J. K. McDonald, bank examiner, took possession of the moneys, books, assets, and papers of said bank, under and by virtue of the order of the comptroller of the United States, the said Nat Poyntz, as president and cashier, and Ollie T. Poyntz, as assistant cashier, and J. L. Giles, as cashier, and J. B. Parramore, as director, and W. R. O'Neal and J. H. Lee, as directors, all constituting a majority of the board of directors of the said company, were arrested and put under bond on criminal charges of violating the national banking laws of the United States, whereby there were no officers of the bank left to institute any proceedings or make any investigations, or that had authority to investigate," etc.

It is further averred that:

"On the 21st day of May, 1894, by consent and authority of James H. Eckles, comptroller of the United States, the plaintiff resumed business, and the moneys, assets, and property of the plaintiff were restored and redelivered to the plaintiff; but all the books of account, whereby discovery and proof could be made of the fraudulent and dishonest acts of the said Nat Poyntz, were retained and kept by the district attorney of the United States, * * * for use as evidence in the prosecution of divers criminal charges against the said Nat Poyntz."

It is further averred that:

"On the 21st day of May, 1894, the plaintiffs entered into an investigation and discovery of the alleged fraudulent and dishonest acts of the said Nat Poyntz; and for the first time the plaintiffs, as such, themselves made the discovery thereof, and duly, and in accordance with all the provisions and conditions of the covenants and agreements contained in defendant's bond or policy of indemnity, gave due notice to the defendant, and began suit within twelve months after the first discovery by the plaintiffs themselves of the fraudulent and dishonest acts of the said Nat Poyntz, thereby fully complying, keeping, and performing all things in said policy of indemnity or bond required of these plaintiffs."

A careful examination of the foregoing allegation shows that, so far as they relate to the bank itself and its officers (other than the guilty president and assistant cashier), there is the most positive assertion that the knowledge and discovery of the fraudulent actions of the Poyntz brothers were not brought home to them until May 21, 1894, and that claim was duly made as provided by the contract, and suit was commenced within the 12 months after such discovery. It is argued, however, by the learned attorney for the defendant, that the limitation commenced to run from the first discovery of the fraudulent acts made by the bank examiner, on August 14, 1893. Whatever may be said in support of the contention that a receiver appointed by the comptroller under the act of congress in such cases ought to be considered as the representative of the bank, so as to charge it with his laches in the collection of its debts, certainly no such contention can be successfully maintained as to a bank examiner. He is strictly the officer and representative of the government, and not of the bank. It is further urged, however, that the allegations are that the receiver promptly acted upon the discoveries of fraud which the bank examiner alleged he had made. These averments, however, must be taken in connection with the other allegations which show that while the receiver may and did have notice of fraud committed, of which he properly gave notice to the defendant, he did not have notice of the character, extent, and details of the fraud, or, in other words, he had not made such discovery of the frauds as would have enabled him to make a definite claim or bring a suit, and it is only after such a discovery that the statute begins to run. Of course, there are cases where the insured might be charged with full knowledge of the fraud, whether there was actual knowledge of the details or not, as where the insured, after notice of the fact that some kind of fraud has been committed, through negligence fails to possess itself of the details at its command. This, however, as we shall presently see, does not apply to this case under the allegations of the declaration. These allegations are that "after due and proper notice of the discovery of the fraudulent acts of the said Nat Poyntz was given to the defendant by John N. C. Stockton, receiver of said bank, the said defendant was, through its agent in Jacksonville, Fla., duly notified that, by reason of the nature and character of the said fraudulent and dishonest acts of the said Nat Poyntz, it was impossible to give in writing the full particulars of the claim made within three months after the discovery," and that the facts were stated showing why it

was impossible to get at the knowledge by details necessary to bring the suit within 12 months from the discovery of the existence of fraud made by the examiner. If the fact that the receiver made such a statement be taken as true, as it must be on demurrer, the truth of the statement itself will be presumed. The receiver, as an officer of the government, will be presumed to have done his duty unless the contrary appears, although, like a receiver of a court, he may, in another sense, also be a representative of the parties to the suit. Even conceding that the receiver was such a representative of the bank as that the limitation against the bank in the contract would commence to run from the time when the receiver made a full discovery of the fraud, there is no admission in the declaration, when fairly construed, which shows any such discovery or knowledge on his part; and, without such admission, the defense under the Florida statute must be made by plea, and not by demurrer. The facts averred in the declaration, however, are peculiar, and seem to take this case outside of the ordinary rule which would make a re-receiver the representative of the bank as to the running of the period of limitation in favor of the defendant.

The pertinent portion of the act of June 30, 1876 (19 Stat. 63), under which Stockton was appointed receiver, on August 14, 1893, provides that, "whenever the comptroller shall become satisfied of the insolvency of a national banking association, he may, after due examination of its affairs, * * * appoint a receiver, who shall proceed to close up such association," etc. The act further provides the method of procedure by which the affairs of the bank are to be closed up. Instead of closing up the business of the association in the method pointed out by the statute for insolvent banks, the allegations of the declarations are that on May 21, 1894, by consent and authority of the comptroller, the bank resumed business, and the money and property of the bank were restored and redelivered to it. No authority can be found in the statutes for this action of the comptroller if the bank were really insolvent. In the light of this action of the comptroller, the inference from the allegations is drawn that the suspension of payments by the bank was caused by the defalcation of the officers against which the defendants had insured the plaintiff; that, acting upon the fact of suspension of payments and irregularities discovered, the comptroller appointed Stockton receiver; that, after giving the affairs of the bank that "due examination" contemplated by the statute, he came to the conclusion that the bank was not insolvent, and that it was not a case for a receiver, as provided by the statute. We have no right to infer from the allegations of the declaration that Stockton was anything more than a temporary or provisional receiver, who was never fully vested with the powers intended to be exercised by receivers of insolvent banks. The nature of such a receivership, resulting from the very things insured against, made it impossible for the plaintiff to obtain the knowledge necessary to make the claim and file suit at an earlier date. The character of the policies insuring the fidelity of the principal officers of the bank would prevent any laches being attributed to the bank by reason of its failure to exercise what, under other

circumstances, would be diligence in getting full knowledge of such a fraud after the first suggestion of its existence is made. The fact that a majority of the directors were arrested and placed in a position where they were powerless to protect the interests of the bank under the allegations of the declaration raises no presumption against them. They are presumed to be the innocent sufferers from the acts of the guilty president and cashier until the contrary appears, and the failure of the plaintiff to act at once is due to the fact that the United States attorney took and kept possession of the books and papers of the bank, to be used as evidence in a criminal cause. This delay is chargeable to the government. Justice requires that the case should be treated as one in which the running of the limitation was stopped by the conduct of the insurer itself, since the delay was the direct result of the evil conduct from which the insurer contracted to protect the insured.

Although the form of insurance is of recent origin, it is now settled that the general rules of construction applicable to ordinary insurance policies are to be applied. Mechanics' Sav. Bank v. Guarantee Co., 68 Fed. 459; Supreme Council Catholic Knights of America v. Fidelity & Casualty Co. of New York, 11 C. C. A. 96, 63 Fed. 48. The condition of an insurance policy of this kind providing for forfeitures is to be construed strictly against the company, and liberally in favor of the insured. Cotten v. Casualty Co., 41 Fed. 506. Limitations of the time of bringing suit in contracts of insurance are not to be applied with the same degree of rigidity as statutes of limitation. Steel v. Insurance Co., 2 C. C. A. 463, 51 Fed. 715; Thompson v. Insurance Co., 136 U. S. 299, 10 Sup. Ct. 1019. See, also, May, Ins. (2d Ed.) § 487; 2 Wood, Ins. p. 1020. Where the performance of conditions precedent are, without fault or laches on the part of the insured, rendered impossible by the acts of the insurer, or even by act of God or of the government or of the courts, such limitations are not to be applied. Thompson v. Insurance Co., 136 U. S. 287, 10 Sup. Ct. 1019; Semmes v. Insurance Co., 13 Wall. 158; U. S. v. Wiley, 11 Wall. 508; Braun v. Sauerwein, 10 Wall. 218; Ang. Lim. §§ 44, 45, 99. Applying these principles to the facts alleged in the declaration, we are of the opinion that the court below erred in sustaining the demurrer and dismissing the plaintiff's suit, and the judgment to that effect is therefore reversed, and this cause remanded to said circuit court, with instructions to overrule the demurrer, and otherwise to proceed in accordance with the views expressed in this opinion.

PARDEE, Circuit Judge (dissenting). The contract of indemnity sued on in this case contains, among others, this stipulation:

"That no suit or proceedings at law or in equity shall be brought or arbitration required to recover any amount hereby insured, unless the same is commenced and the process served within the term of twelve months next after the first discovery of any such fraud or dishonesty."

That this was a valid stipulation, binding upon the parties, ought not to be disputed in this court.

The supreme court of the United States says:

"Contracts of insurance are contracts of indemnity upon the terms and conditions specified in the policy or policies embodying the agreement of the parties. For a comparatively small consideration, the insurer undertakes to guaranty the insured against loss or damage, upon the terms and conditions agreed upon, and upon no other; and, when called upon to pay in case of loss, the insurer, therefore, may justly insist upon the fulfillment of these terms. If the insured cannot bring himself within the conditions of the policy, he is not entitled to recover for the loss. The terms of the policy constitute the measure of the insurer's liability, and, in order to recover, the assured must show himself within those terms; and if it appears that the contract has been terminated by the violation, on the part of the assured, of its conditions, then there can be no right of recovery. The compliance of the assured with the terms of the contract is a condition precedent to the right of recovery. If the assured has violated or failed to perform the conditions of the contract, and such violation or want of performance has not been waived by the insurer, then the assured cannot recover. It is immaterial to consider the reasons for the conditions or provisions on which the contract is made to terminate, or any other provision of the policy which has been accepted or agreed upon. It is enough that the parties have made certain terms conditions on which their contract shall continue or terminate. The courts may not make a contract for the parties. Their function and duty consist simply in enforcing and carrying out the one actually made." Imperial Fire Ins. Co. v. Coos Co., 151 U. S. 462, 14 Sup. Ct. 379.

The declaration admits that the first discovery of fraud and dishonesty of the official whose honesty was guarantied by the contract was in August, 1893. The suit was not brought until February 21, 1895, more than 18 months after the first discovery of the dishonesty and fraud. This delay in bringing the suit is the main ground for sustaining the demurrer in the court below, but it has received scant, if any, attention in the opinion of the majority. The contention of the plaintiff in error, which is indirectly, if not directly, sustained by the opinion of the court, is that because of the appointment of a receiver by the comptroller of the currency, August 14, 1893, who took possession of the bank, its books and papers, and retained possession until May 21, 1894, the bank during that time was in a quasi state of suspension and incapacity, without agents through which to act, and unable to perform any corporate function. If this were true as a matter of law, it is difficult to see wherein it would affect the indemnity company, unless, indeed, the indemnity company was chargeable with the suspended animation of the corporation. In connection with other matters discussed in the opinion of the majority, it is said that the indemnity company, as security for the defaulting officials, was more in fault than the bank; but I take it that, although this is in the opinion of the court, it is not the serious opinion of the judges, but rather an argumentative suggestion. It is to be further noticed that the suspended animation for want of agents and corporate capacity, on account of the receivership, was ended May 21, 1894, leaving full three months within the year stipulated for the resurrected corporation to begin suit within the stipulated limitation. As a matter of law, however, the appointment of the receiver by the comptroller of the currency in no wise suspended the corporate capacity and power to act of the corporation. The appointment of the receiver operated merely for the corporation a change of agency from the president and directors elected by the stockholders to the receiver. The law providing for the incorporation, management,

liquidation, and settlement of national banking associations writes into the charter of every national bank the provision that in certain contingencies the comptroller of the currency may oust the agents chosen by the stockholders, and substitute therefor an agent appointed by himself, who thereafter fully represents the corporation.

The supreme court of the United States has settled that the receiver is a proper party to institute all suits for the association, represents both the creditors and the association, and that the bank does not cease to exist on the appointment of a receiver. Kennedy v. Gibson, 8 Wall. 506; Bank of Bethel v. Pahquioque Bank, 14 Wall. 383; Bank v. Kennedy, 17 Wall. 19; Rosenblatt v. Johnston, 104 U. S. 462. It has never been contended that the appointment of a receiver stops the running of the statutes of limitations of debts and obligations due the bank. Why it should under a contract of indemnity, I cannot see.

In Surety Co. v. Pauly, 38 U. S. App. 283, 18 C. C. A. 657, and 72 Fed. 484, it is said that:

"The first notification to the surety company in this case, as in the other, was sent May 23, 1892, and the proofs of loss transmitted June 24, 1892. There was a similar conflict of evidence as to the date when the receiver acquired knowledge of Collins' acts of fraud or dishonesty, and the question whether notice and proofs of loss were sent with reasonable promptness was left to the jury under a charge more favorable even to the defendant below than was the charge in the O'Brien Case [18 C. C. A. 644, 72 Fed. 470]. In view of the evidence and of the instructions given by the court, plaintiff may fairly be given the benefit of the presumption that the jury found discovery to have been made as late as 'a few days before May 23, 1892.' It is contended that this was more than six months from the death, dismissal, or retirement of the employé. The receiver qualified and took possession December 20, 1891, and Collins died March 3, 1892. Plaintiff in error relies upon the fact that on November 12, 1891, the bank examiner took possession of the assets of the bank, which had suspended payment. That act, however, did not operate as a 'dismissal or retirement of the employé from the service of the employer,' which is the phraseology of the bond. Collins, on that date, suspended the transaction of a banking business; but the bank still existed as a national bank corporation, and Collins was still its president. If, at any time before the receiver took possession, the parties interested in the bank had made good its deficit, and the bank examiner had restored the assets, no new appointment would have been necessary to put him in the service of his employer. The assignments of error covering this point are unsound."

In that case, in order to hold the surety company liable, it was necessary to decide that the appointment and possession of a receiver in no wise suspended the corporation, at least to any such extent as to operate the discharge of the employed. In the case under consideration, in order to hold the surety company, the reverse is necessary; and this court holds that an entire incapacity seized the corporation the moment the statutory receiver took possession. There is too much tendency on the part of judges to construe away valid provisions in contracts of insurance and indemnity, and thus reach some more equitable conclusion. The result is much "hard case" law, which is mostly bad law, and always variable law. A distinguished judge said in regard to setting aside salvage contracts on slight grounds:

"If a solemn contract, made under the most serious circumstances, like the one under consideration, could be repudiated at pleasure by one of the par-

·ties to it, on such a ground as that insisted upon here, no contract could be relied upon as binding; and all the law of contracts, affecting so largely the affairs of mankind as that law does, would have to be treated as an idle jargon."

The applicability of this to rulings in insurance cases is apparent. In my opinion, the trial judge ruled correctly on the demurrer to the declaration, and his judgment should be affirmed.

As the opinion of the court disposes of three cases between the same parties, involving the same questions, so this dissenting opinion is intended to apply in the three cases.