## HARKISON v. HARKINSON.

(Circuit Court of Appeals, Eighth Circuit. March 26, 1900.)

No. 1,256.

1. LIMITATIONS—ACTION FOR FRAUD—COLORADO STATUTE.

By a statute passed in Colorado in 1861 (Sess. Laws 1861, p. 341) it was provided that actions on the case should be brought within six years after the cause of action accrued, and bills for relief on the grounds of fraud within three years from the time of the discovery of the fraud. In 1877 the state adopted a Code of Civil Procedure, by which the distinction between actions at law and suits in equity was abolished. *Held*, that the change in the form of action did not affect the operation of the prior statute of limitations, but whether an action based upon fraud was governed by the limitation of three or six years depended on whether it was in substance an action on the case or for equitable relief.

2. TRIAL—ACTION OF COURT—MISLEADING REMARKS.

    An expression of opinion by the court on overruling a motion for a non-suit at the close of plaintiff's case, as to the nature of the action, which was at variance with the instructions subsequently given to the jury, and which may have misled the defendant to his prejudice in introducing his evidence, is ground for reversal of a judgment against the defendant.

    Thayer, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the District of Colorado.

Henry J. O'Bryan (J. Grattan O'Bryan, on the brief), for plaintiff in error.

Ralph Talbot (John H. Denison and William H. Wadley, on the brief), for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

SANBORN, Circuit Judge. On June 30, 1897, the defendant in error, David Harkinson, brought an action against the plaintiff in error, Charles T. Harkison. The ground of his complaint was that on October 12, 1892, he delivered to Harkison, as his agent, $8,000, and directed him to purchase with it the stock of the Anaconda Gold-Mining Company; that on October 18, 1894, Harkison bought 8,000 shares of the stock, which was of no greater value than $4,000, and paid $4,000 for it; that, maliciously and with willful deceit, he represented to the defendant in error that this stock was worth $8,000, and that he had paid $8,000 for it; and that he retained $4,000 of the money sent him by his principal, and converted it to his own use. The prayer of the complaint was that the defendant in error might have judgment for $10,000 and costs, that he might have execution against the body of the plaintiff in error, and that the plaintiff in error might be imprisoned for a term not exceeding one year, or until the judgment was paid. The latter part of this prayer is based on section 2164, Mills' Ann. St. Colo., which provides that in any civil action founded upon tort, in which there is a verdict for the plaintiff, and the jury shall find that in committing the tort complained of the defendant was guilty of malice, fraud, or willful deceit, the plaintiff may have execution against the body of the defendant. To this complaint the plaintiff in error answered. In his answer he denied the allegations of the complaint, and averred that on October 12, 1892, the defendant in error purchased of him the stock of the gold-mining company in controversy, for the agreed sum of $8,000, and paid him for it. There was a trial of the issue before the jury, and a verdict and judgment for the defendant in error for $5,520.24 and costs; that execution should issue therefor, and that, upon its being returned unsatisfied, the defendant in error should have execution against the body of the plaintiff in error; and that he should be imprisoned in the common jail of Arapahoe county for the full period of one year unless the judgment should be sooner paid.

One of the chief specifications of error is that this action was barred by the statute of limitations of the state of Colorado. This contention is founded upon the following provisions of the statutes: In 1861 the legislature of the territory of Colorado enacted a statute

for the limitation of actions, which provided that actions on the case, except actions for slanderous words and for libels, should be commenced within six years next after the cause of action should accrue, and not afterwards, but that bills for relief on the ground of fraud should be filed within three years after the discovery by the aggrieved party of the facts constituting such fraud, and not afterwards. Sess. Laws Colo. 1861, pp. 341, 342, §§ 1, 12. These provisions of the statute have continued in force in the territory and state of Colorado from 1861 to the time of the commencement of this action. Mills' Ann. St. Colo. 1891, §§ 2900, 2911. In 1877 the legislature of the state of Colorado adopted a Code of Civil Procedure, the first section of which contained this provision:

"That the distinction between actions at law and suits in equity and the distinct forms of actions and suits heretofore existing are abolished and there shall be in this state but one form of civil action for the enforcement or protection of private rights, and the redress or prevention of private wrongs, which shall be the same at law and in equity, and which shall be denominated a civil action, and which shall be prosecuted and defended as prescribed in this act." Code Civ. Proc. Colo. 1877.

It is claimed that the abolition of forms of action abolished the six-years limitation upon actions on the case for fraud, and extended to them the three-years limitation upon bills for relief on the ground of fraud. This claim, however, does not seem to be supported either by reason or by authority. Forms of action were abolished by the provisions of the Code, but the natures of actions at law and bills in equity remain as clear and distinct as ever. There is nothing in the Code to indicate that it was the intention of the legislature by its enactment to modify or repeal any of the provisions of the statutes of limitations which were then in force in the state of Colorado. It would be as reasonable to suppose that the six-years limitation prescribed for an action on the case was extended to bills for relief on the ground of fraud, as to imagine that the three-years limitation upon the latter was applied to the former. Any attempt to construe or interpret the statutes of limitations of this state upon any such theory must result in nothing but doubt, uncertainty, and conjecture. The truth is that the adoption of the Code had no effect upon the statutes of limitation of the state which were then in force, and which have been repeatedly re-enacted, and that actions on the case for fraud remain limited to six years, while bills for relief on that ground are barred in three years. The suit at bar is an action on the case. It was not for slanderous words or for libel. It was commenced within six years after it accrued. It was governed by section 2900, Mills' Ann. St., and it was rightly sustained by the court below.

After the defendant in error had produced his evidence and rested his case, the counsel for the plaintiff in error moved for a nonsuit on the ground that the action was barred by the limitation of three years. Upon the presentation of this motion the following colloquy resulted:

"The Court: The case does not necessarily stand upon any question of fraud or deceit. If the defendant was the agent of the plaintiff for purchasing stock, and he received more money than he laid out in the purchase, he may be liable for the excess in an ordinary action of assumpsit. It does not

stand upon any idea of fraud or deceit at all, and whether he was agent or not is a question for the jury. We are not to determine that. That is a question for the jury to decide. I do not think there is any question of the statute of limitations in relation to the accusations of fraud and deceit in the case. It is true, it is averred in the complaint that the defendant fraudulently converted this money to his own use; but that does not make the case an action in tort, and for the recovery of damages for a tort. The case stands more in the way of an ordinary action of assumpsit for money had and received to the plaintiff's use. Mr. O'Bryan: In regard to the suggestion as to that, I might say that, if your honor will take the trouble to read the complaint, your honor will find that the entire action in this complaint sounds in tort; that they have asked in this matter for the arrest of the defendant's body, which alone, under the statutes of the state of Colorado, could sound in tort. The doctrine that has been maintained is that the action is tort, and sometimes we must, even in the presence of the Code, look to the question of the prayer to find out what their action is. If it is conceded this is a simple action of assumpsit, and your honor holds this an action of assumpsit, and not of tort, I would like to have that holding converted into a finding. The Court: I think it stands in that way, sir. Mr. O'Bryan: Then I ask that the question as to the arrest of the body be absolutely stricken from the complaint. The Court: We will come to that. I wish to have it noted that Mr. O'Bryan's motion is overruled."

The defendant thereupon proceeded to introduce his evidence, and at the close of the trial the court charged the jury in this way:

"You are instructed that this is an action on the case, founded upon tort; and, if you shall find for the plaintiff herein, you may state in your verdict that, in committing the tort complained of, the defendant was either guilty of fraud or willful deceit, as you may believe the case to be from the evidence."

Under this instruction the jury found that, in committing the wrong complained of, the plaintiff in error was guilty of willful deceit, and the judgment of imprisonment followed. The statement of the court at the close of the case of the defendant in error that the suit did not stand upon any idea of fraud or deceit at all; that the allegation in the complaint that the defendant fraudulently converted the money to his own use did not make the case an action in tort, and for the recovery of damages for a tort; and its statement that, in its opinion, this was a simple action of assumpsit, and not an action of tort,—were well calculated to lead the plaintiff in error to suppose that the question of deceit and fraud was eliminated from the case. He proceeded to present his evidence, and a careful perusal of it fails to show that any testimony was elicited regarding the intent of the plaintiff in error to deceive or defraud the defendant in error. His counsel insist that they put in his defense in reliance upon this ruling of the court, and asked no questions relative to the intent, knowledge, or purpose of their client, because they relied upon the statement of the court that the charge of fraud and deceit was no longer in issue. After the evidence had been introduced, however, the court instructed the jury that they might find the existence of deceit and fraud, and rendered a judgment of imprisonment upon that finding. This was undoubtedly a surprise to the plaintiff in error and his counsel, and the declaration of the court at the close of the case of the defendant in error probably misled them, and justified them in omitting any evidence upon this issue. For this reason, the trial was not a fair one, and the judgment must be reversed, and a new trial granted.

. .There is one item of testimony to which we call attention, as the

case is to be tried again. For the purpose of laying the foundation for impeachment, the plaintiff in error was asked if he did not state to Miss Mary Harkinson that he had none of his stock for sale, and he answered that he did not think he did. Miss Buck was then permitted to testify, over the objection of the plaintiff in error, that he had refused to buy any stock for her, and had refused to sell any of his stock to her. This was not competent impeaching testimony, because it was on an immaterial issue, and because Harkison had not testified that he refused to buy for or sell to Miss Buck. The judgment is reversed, and the case is remanded for a new trial.

THAYER, Circuit Judge (dissenting). I deem it wholly unnecessary to reverse the judgment in this case because of the colloquy between the court and counsel which is referred to in the majority opinion. The complaint on which the case was tried charged fraud, in that the defendant below had received $8,000 from the plaintiff below to buy stock, and had reported that he had expended it in purchasing 8,000 shares at $1 per share, when it only cost 50 cents per share. The proof was in accordance with the allegations, and was of such a nature as would have warranted any jury in finding, as they did, that the defendant "was guilty of willful deceit." Fraud inhered in the transaction as charged and proven, although the action might be treated as one in assumpsit on the case; and the defendant had ample opportunity to exculpate himself, which he failed to do to the satisfaction of the jury. No evidence which he might have offered as to what his intent was would have served to overcome the intent which the law presumes from the nature of his acts. I think the judgment should not be disturbed.